UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
ADELE E. NIEVES,

        Plaintiff,

  -against-                      **MEMORANDUM AND ORDER**
                                        1:16-cv-00286(FB)
CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.
---------------------------------------------------x

*Appearances:*
| *For the Plaintiff* | *For the Defendant* |
|---|---|
| WENDY BRILL | DARA A OLDS |
| 150 East 69th Street, 3H | United States Attorney's Office |
| New York, NY 10021 | Eastern District of New York |
| | 271 Cadman Plaza East |
| | Brooklyn, NY 11201 |

**BLOCK, Senior District Judge:**

      Plaintiff Adele E. Nieves ("Nieves") seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") benefits. Both Nieves and the Commissioner move for judgment on the pleadings. For the reasons stated below, Nieves's motion is granted, and the Commissioner's motion is denied. The case is remanded for calculation of benefits.

**I**

      On October 5, 2012, Nieves applied for SSD and SSI benefits alleging disability

onset as of December 31, 2009 for diabetes, back pain, pain in lower extremities, obesity, hyperlipidemia, opium and marijuana abuse in remission, bipolar disorder, schizo-affective disorder, asthma, and hypertension. Applying the familiar five step-process,[1] the administrative law judge ("ALJ") found that Nieves did not meet the required listings and maintained the residual functional capacity ("RFC") for light work,[2] which existed in significant numbers in the national economy. The VE suggested routing clerk, mail clerk, and marker as jobs for a person with the RFC for light work. The VE did note that if Nieves's diagnosis was credited, no jobs would exist in the national economy for her, a proposition which the ALJ also stated. The Appeals Council denied Nieves's request for review. Nieves timely sought judicial review.

## II

---

[1] Social Security Administration regulations establish a five-step process for evaluating disability claims. The Commissioner must determine "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *McIntyre v. Colvin*, 748 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)(v)). The burden of proof is on the claimant in the first four steps, but shifts to the Commissioner at the fifth step. *Id.* At the fifth step, the Commissioner need only show "that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (citing 20 C.F.R. § 404.1560(c)(2)).

[2] However, the ALJ precluded her from performing work requiring excessive pulmonary irritants, heights, driving, or exposed moving machinery. The ALJ further found she was limited to jobs requiring simple, routine repetitive tasks requiring only occasional contact with supervisors, coworkers, and the public.

2

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart,* 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If contradictions appear in the record and the ALJ fails to reasonably explain why he or she opted for one interpretation over another, the Commissioner's findings must fall. *See, e.g.*, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . .").

Nieves argues that the ALJ erred in finding that Nieves did not meet the listings 12.03 and 12.04 for "schizophrenia spectrum, and other psychotic disorders" and "depressive, bipolar and related disorders," respectively, because substantial evidence did not support his determination. 20 CFR Pt. 404, Subpt. P, App. 1, §§ 12.03A-C, 12.04A-C. The Court agrees.

Inexplicably, the ALJ did not even consider Nieves's symptoms under 12.03. This alone would require remand for reconsideration. After review, there is uncontrovertable evidence in the record that Nieves meets the requirements of the 12.03 listing.

### A. 12.03 Schizophrenia Listing

To meet the requirements of listing 12.03, the listing for schizophrenia spectrum and other psychotic disorders, the claimant must meet the requirements of 12.03A and either 12.03B or 12.03C. 20 CFR Pt. 404, Subpt. P, App. 1, § 12.03A-C. Section 12.03A requires medical documentation of one or more of the following: delusions or hallucinations, disorganized thinking (speech), or grossly disorganized behavior or catatonia. *Id.* § 12.03A. Nieves meets 12.03A because she suffers from auditory hallucinations. She hears voices, carries on conversations with dead relatives, and in June 2012, she broke a bottle over a stranger's head at the instruction of her auditory hallucinations. She was hospitalized for her hallucinations in 1997, 1998, 2010 and 2012.

Section 12.03B requires at least two of the following limitations of mental functioning related to the impairment: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.[3] *Id.* § 12.03B. In determining whether a claimant has marked limitations of mental functioning, the ALJ must consider all the

---

[3] The requirements under 12.03B and 12.03C are identical to the requirements under 12.04B and 12.04C. The ALJ only analyzed Nieves's symptoms under 12.04B. However, his analysis under 12.04B is equally applicable to 12.03B (the ALJ provided no analysis for his conclusion that Nieves did not meet the requirements of 12.04C, a failure that independently compels remand).

4

relevant medical and non-medical evidence in the record. Relevant factors include how clinicians diagnose the claimant's level of disorder, the claimant's mental functioning in daily activities and work settings, the overall effect of limitations, and the effects of support, supervision, and structure on claimant's functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders F.3.a-f. The evidence in this case compels a finding that Nieves exhibits marked restrictions in her activities of daily living and social functioning.

1. **Activities of Daily Living**

Nieves exhibits marked restriction of activities of daily living because she is unable to dress herself, clean, or cook without external intervention. She requires daily intervention by her daughter to make sure she gets out of bed, gets dressed, bathes, grooms herself, and takes her medication. She lives in a managed mental facility with a social worker available daily (her social worker visits her twice a week). Her supervisor at the facility visits once a month to clean her apartment. Prior to her current living arrangement, she was homeless or living in shelters. When she does not leave the house, she does not dress herself and often does not get out of bed. Nieves cooks only with a microwave because she is unable to manage a stove with burners. When she had a stove with burners, she would forget to turn them off and frequently burn herself. For her own safety, her stove was removed. Given her inability to perform these basic daily functions, she suffers extreme limitations in daily living.

### 2. Social Functioning

Nieves exhibits marked limitations in social functioning because she has little social contact with others and has a history of violence related to her disorders. She rarely leaves her mental health facility. Her primary interactions with others are with her daughter, who calls her daily to make sure she gets dressed, takes her medication, and cares for herself, and the supervisor. Nieves rarely goes out and is afraid to take the train because she was the victim of a rape. She will now only go on the train if she is accompanied by another person. She does not own a car. Due to her depression, she cries for at least an hour every day. She was unable to control her crying during her hearing with the ALJ. As mentioned before, her voices have instructed her to physically assault a stranger on at least one occasion, an instruction she acted upon. Her psychiatric history also includes reference to a previous act of violence against a woman at a Back-to-Work program. Her hospitalization in 2012 was triggered in part because she reported homicidal ideation. Her related bipolar disorder caused her to steal money from a previous employer during her manic phases. This long history of maladaption to society, including a history of violence, shows extreme limitations in her ability to maintain social functioning.

### B. Nieves's Medical Record

Nieves's medical record supports this finding as well. She has a long record of treatment with Dr. Icelini Garcia-Sosa, M.D. at the Floating Hospital, as well as

multiple hospitalizations for her mental disorders. She sees a psychiatrist monthly and a psychotherapist twice a month. Her doctors have diagnosed her with schizophrenia, depression, and bipolar disorder. Dr. Garcia-Sosa noted that she met all four requirements of 12.03B,[4] although she is only required to meet two to qualify for the listing.

The ALJ considered her impairments under 12.04—the listing for depression and bipolar disorder—but found the above problems constituted only moderate impairments.[5] This conclusion is incompatible with the evidence. The ALJ even stated at the hearing that the medical source statements in the record "would obviously prevent all work if accepted."[6] AR 56.[7] The ALJ provides no reason not to accept these statements except his own contrary opinion, which he improperly substituted for those of the treating physicians.[8] *See, e.g.*, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)

---

[4] Garcia-Sosa also found she had extreme limitations in maintaining concentration, persistence, and pace, and that she had more than four episodes of decompensation of extended duration. However, the record is much less developed on these points. Because only two of the four criteria of 12.03B needs to be met to meet the requirements of the Listing, and there's incontrovertible evidence that Nieves meets two criteria, the Court does not need to reach these questions.

[5] As discussed above, 12.03B and 12.04B have identical requirements.

[6] Even the consultative physician, who provided the most conservative diagnosis of Nieves's symptoms, found that "[t]he results of the examination appear to be consistent with psychiatric problems . . . and these may significantly interfere with the claimant's ability to function on a daily basis" and diagnosed Nieves with schizoaffective disorder. AR 459.

[7] AR refers to the Administrative Record.

[8] The ALJ does discuss Dr. Garcia-Sosa's credibility in a different section of his opinion, while considering Nieves's RFC. He dismisses her opinion as "not supported by the treatment records" but provides no explanation for his conclusion except that the claimant dressed

7

("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.").

There is simply no reading of the evidence in this case that supports the ALJ's conclusion. Because both 12.03A and 12.03B are satisfied, Nieves meets the 12.03 listing for schizophrenic disorders and is disabled.[9]

## C. Remand for Calculation of Benefits

"Because the record provides persuasive proof of plaintiff's disability, proper application of the legal standards would not contradict the weight of this evidence in the record, and 'the Commissioner failed to introduce evidence sufficient to sustain [her] burden of proving that [plaintiff] could perform the exertional requirements of sedentary work,' the proper course of action is to reverse the ALJ Decision and 'remand the matter to the Commissioner for a calculation of disability benefits.' " *Henningsen v.*

---

appropriately for her medical examinations. AR 18. The claimant's choice of clothing at a medical examination is not sufficient to overcome a diagnosis of schizophrenia based on years of treatment records that includes multiple hospitalizations and violent episodes. The ALJ also criticizes Garcia-Sosa's conclusion that Nieves requires a highly supportive living environment to function because she used to live in a shelter. By the ALJ's logic, every homeless person in America would be disqualified for benefits because of their "ability to live functionally on the streets." Regardless, the shelter was a mental health shelter that provided support for her conditions, so she was not living "independently," even as erroneously defined by the ALJ.

[9] Though Nieves's mental limitations are sufficient to compel a finding that she meets the requirements of the 12.03 listing, and therefore compel a finding of disability in her favor, the Court notes that the same symptoms would compel a similar finding for 12.04 (the ALJ found in his opinion that she meets the requirements of 12.04A, and 12.04B's requirements are identical to 12.03B). Further, her physical limitations are severe, including back pain, asthma, and frequent seizures. Therefore, even if she did not meet the requirements for the 12.03 and 12.04 listings, her combination of her mental and physical limitations would require a RFC finding that she is incapable of any work in the national economy.

8

*Comm'r of Soc. Sec. Admin.*, 111 F. Supp. 3d 250, 273 (E.D.N.Y. 2015) (quoting *Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000)); *see also Finnegan v. Berryhill*, 2017 WL 4990565, at *5 (E.D.N.Y. Oct. 30, 2017) (noting need to combat long delays in processing social security cases).

## III

Nieves's motion is granted, and the Commissioner's motion is denied. The case is remanded for calculation of benefits.

**SO ORDERED**

/S/ Frederic Block  
FREDERIC BLOCK  
Senior United States District Judge

Brooklyn, New York  
November 7, 2017